Geiger, J.
The defendant, Daniel Stumpf, is prosecuted on an information filed under Section 4364-20, Revised Statutes, on the following charge: “That on the 9th day of September, 1906, the said 9th day being the first day of the week, commonly called Sunday, did unlawfully and knowingly allow to remain open a certain room, said room being then and there and theretofore a place where on other days of the week than the first, commonly called Sunday, were there and then sold intoxicating liquors. ’ ’ The statute provides that the sale of intoxicating liquors on Sunday shall be unlawful; and further, that “all places where such intoxicating liquors are on other days sold or exposed for sale, excepting regular drug stores, shall on that day be closed, and whoever makes any such sales, or allows any such place to be open or remain open on that day shall be fined. ’ ’
The evidence offered discloses the fact that the said Daniel Stumpf is and has been for a number of years past a saloon- *138 keeper in the city of Springfield, having his saloon on the north side of west Main street, cornering on an alley, which alley runs the entire depth of the saloon building. In the front part of the building, on the ground floor, facing Main street is the main bar room, having a door opening on Main street. This room is 18 by 26 feet, and has on the east side thereof, near the front, a cigar stand; then a screen-; and behind this screen on the east side of the room is the bar, and near the bar, in the northeast corner of the room is the cooler.
Immediately in the rear of this main bar room, and connecting therewith by a door, is a room the same width as the bar room and slightly less in depth. It is designated by the saloon-keeper as a stock room. On the east side of this room is a closet, in which the evidence shows there was a considerable quantity of liquor, some in barrels, some in cases, and-'some in open bottles. In the furthest corner of this stock room was a door leading to the water-closet. The middle part of the rear end of said room was a occupied by a window, and a door leading outside. There was another door in the east side of the room, which led to a small hallway and from that to the outside.
The evidence discloses that on the 9th day of September, 1906, at about 11 0 ’clock in the morning, certain police officers went to the rear door of the building leading into the small hall, and from this into the so-called stock-room. The officers found the outside door open and immediately inside the door was a person designated by the officers as a “capper,” who upon perceiving the entrance of the first officer threw across the door a heavy scantling which was so arranged as to bar the further ingress from the outside.
The officer who had gained admission ordered the scantling removed, which was thereupon done, and the second officer entered. Leaving the small hallway they entered the rear room. In this room at the time was found the proprietor, Daniel Stumpf, and his son, the son being in his shirt sleeves and wearing an apron. Also in this room a Mr. Sider, who had no connection with the saloon at all, but claimed to be there with Mr. Stumpf to settle some business transactions. There was one other person in the room, who claims to have been Mr. Stumpf’s barkeeper and a roomer at the house.
*139 The officers describe the condition of the room about as follows: The door leading from the back room to the front room was closed. In the lock was a key, one of a bunch of several. The closet on the east side of the room was open. In it on the floor were a number of pint bottles of beer, and a tub in which there was other beer which had been cooled, as the officer said, to about the proper temperature for drinking. There was also beer in cases. There were at least two bottles of whiskey on the floor of the closet, one unopened and the other opened and about half full. There were barrels of whiskey in this room near the closet. There was one table in the room, which was the ordinary cheap bar room table. About this table on the floor were a large number of caps from the tops of beer bottles. One officer says that near the table on the floor was an empty beer bottle. Mr. Stumpf and Mr. Sider were sitting at the table. In the closet was a tray with whiskey glasses upon it. There was no other evidence of any drinking or sale of liquor at the time the officers had gained an entrance to the place.
After the officers had entered, the son of Mr. Stumpf took out of the door the bunch of keys and closed and locked the closet door; but, upon being directed by his father, he re-opened it.
Mr. Sider who was found in ’the room, took the first opportunity to escape from the room, and ran down the alley in the endeavor to get away; but was captured by a pursuing officer within a short distance. The telephone used by the saloonkeeper was in this back room.
The evidence shows that during the other days of the week this back room is open in free connection with the bar room in front through an ordinary door, in an otherwise solid partition between the two rooms, extending from the floor to the ceiling. The evidence further shows that at different times the table in 'the back room is used as a card table.
There is a conflict of testimony as to whether this back room is used for drinking purposes, or whether any liquor is drank or "paid for in this back room. The witnesses for the defendant testified that during a long acquaintance with the place they had never seen liquor served in the back room, and that the proprietor *140 has frequently refused to sell or deliver liquor in the back room, and had stated to those desiring to buy that they must go into the bar room and purchase their liquor at the bar.
The claim of the defense is that this back room is used entirely as a stock room, for the keeping of the liquors which are not then offered for sale; and that consequently there is no violation of the statute, in that the place 'was open on Sunday, and that there could be no violation, even though the place was habitually open on Sunday for’ the sale of intoxicating liquors; for the reason that the statute only contemplates the closing on Sunday of such a place where intoxicating liquors are on other days sold or exposed for sale.
The defendant gave evidence tending to account for the presence of all the persons who were in the saloon at the time of the entrance of the officers, but in the opinion of the court, there can be no question as to the fact that this rear room was open on the Sunday in question, even though no atempt had been made to sell liquor, and even though the presence of those in the room might.be accounted for. The rear door was open; the officers entered without trouble; and the way was only barred when it was discovered that the officers were about to enter the place.
In State v. Heibel, 54 O. S., page 321, it is held that it is an offense against the provision of Section 11 of the act of May 14, 1886, to keep a saloon open on Sunday so that patrons may enter, although business is not carried on as on other days of the week. In this case the evidence tended to show that two persons were admitted to the defendant’s saloon on Sunday for the purpose of varnishing the woodwork, and that they drank beer for which they did not pay. There was also evidence to show that several other persons were admitted to the saloon for the purpose of buying oysters, and that oysters were sold to them. The prosecutor asked the trial court to charge that “if the said place was on said day so kept open as to be accessible either by front, rear, or side door, to such of its patrons as might wish to enter and occupy the same as a resort, or such persons of the public as might wish to enter, the jury should return a verdict of guilty. This request of the prosecutor was *141 refused by the trial court, and the prosecutor excepted, which exception was sustained by the Supreme Court.
The court says the statute requires the place to be closed, while the instruction indicated the opinion of the trial judge to be that the regular business should be closed. The instructions given and the refusal to instruct as requested introduced a question as to the defendant’s purpose, which the terms of the statute do not permit. That emergencies might arise which would make it lawful for the proprietor and others to enter the saloon on Sundays may be an inference from the general purpose of the statute; but there was no suggestion of such emergency in this-case.
Judge Buehwalter, in the case of Lederer v. State, reported in 24 Weekly Law Bulletin, page 153, states that—
“It was not the intention of the statute to prevent a proprietor, or his family living in the building, having access to the premises through the saloon, or to open for such individual purposes. But the statute aims to prevent opening of such places as a public resort on Sunday, where patrons and people may freely enter, whether intoxicating liquors be exposed for sale or not. The authorities are uniform that the manner of opening, whether by rear or front door, or if it be unlocked and opened only to those who knock, is immaterial. For, if the public can enter, it is open.”
Judge Phillips in an anonymous case, commented upon in 24 Weekly Law Bulletin, page 345, in his charge to the jury says:
“The statute says that all places excepting drug stores where intoxicating liquors are sold on business days of the week, shall be closed on Sundays, and it further provides that whoever allows any such place to be open on that day shall be punished. The prime object of the law is to prevent carousing and drinking on Sunday, and to preserve order and quiet on that day. It undertakes to do this by closing saloons, and thereby shutting out those who usually congregate there, and shutting in the intoxicants usually kept there. lie violates the law who either opens "the place and lets the public in, or opens the place and takes the liquor out to be drank as a beverage on the premises and on that day.”
Effinger v. State, 9 C. C. Rep., page 376, holds that if a saloon is open on Sunday it is prima facie a violation of the statute under Section 8902.
*142 So that there is then no room for doubt of the opening within the meaning of the statute of the back room in which the officers found the proprietor and his son. The question then arises as to whether or not this back room was a place where intoxicating liquors were on other days of the week sold or exposed for sale.
It is claimed by the defendant that it was entirely distinct and separate from the room in which liquors on other days of the week were sold, to-wit, the bar room. The evidence shows beyond a reasonable doubt that on other days of the week the door is open from the front room to the back room; the free access is given from the. front room to the back room, and through the back room to the water closet and the rear doors; that the telephone was in the back room; that the cupboard containing a large stock of liquors was in this back room; that the back room is used as a card room by patrons of the saloon, and evidence tending to show that liquor is drank and paid for in the back room.
The section of the statutes under which this action is brought makes a special provision in favor of hotels and eating houses, stating that in such the word “place” therein used shall be held to mean the room or part of the room where such liquors are usually sold or exposed for sale, and the keeping of such a room or part of room securely closed shall be held, as 'to such hotels and eating houses, as a closing of the place within the meaning of the section.
Did the Legislature intend by the word “place” in connection with the ordinary saloon, not a hotel or eating house, to designate only that part of such saloon property as contains a bar room where the liquor is actually sold over the bar? Or did the Legislature intend to include all that portion of the place or establishment ■which was concerned in and used in connection with the sale and exposure for sale of liquor on other days of the week than Sunday? "What is the reasonable interpretation of their meaning, considering the purpose for which the act was passed?
The act is intended to prohibit the sale of intoxicating liquors on Sunday and to prevent the congregation of individuals or the *143 public in such places on Sunday; and to prevent tbe collection together of those who on week days are accustomed to frequent such places.
It seems to this court only reasonable to construe the word “place” as used in the statute, to cover not only the room in which the intoxicants are actually sold, but to cover adjoining rooms to which the public accustomed to patronize said saloon have free access in connection with said saloon, and which rooms are used for the principal purposes in connection with said saloon and the sale of intoxicating liquors. Especially is this so where, as in this case, the stock of liquors of the saloon-keeper is contained and kept in the closet in said back room, and must necessarily be carried in and out of the back room on frequent occasions. It would be impossible to draw an imaginary line at the open doorway and say: Thus far shall the sale and exposure of intoxicating liquor extend, and no further, while at the same time the proprietor, the barkeeper and the patrons freely pass from one room to the other.
It would be a dangerous doctrine to sustain, to say that a saloon-keeper might keep his stock of goods in broken and unbroken packages in a room adjoining his bar room, and use this room during the week for the ordinary purposes of his business, taking care only that no liquor is actually paid for in said room; and then on Sunday close the door leading from the bar room into such room, and open that room for the use and occupation of the public without the violation of the statute.
It is clear to the1 mind of the court that the exception in favor of hotels and regular eating houses is to cover the very point here in controversy in relation to such places, viz: that in reference to hotels and eating houses the place where liquor is usually sold or exposed for sale may be shut off and securely closed, and the rest of the house kept open without violation of the statute.
It is clear from the case of Lederer v. State, 24 Weekly Law Bulletin, 153, in the opinion of Judge Buehwalter, as well as from the opinion of the circuit court in the same case, as reported in 5 C. C., page 623, that if a public eating house or hotel usually *144 sells and exposes liquor for sale in any part of that house, that part must be closed on Sunday, even though it may include the regular dining room. As Judge Buehwalter says, on page 156—
John M. Call, for the state.
Horace C. Keifer, for defendant.
‘ ‘ If the proprietor of these various kinds of business desires to legally operate them on Sunday, he can-only do so and accommodate himself to the law by having his saloon or place for selling intoxicating liquors in an adjoining or convenient room and apartment which he can close and thereby prevent its occupancy as a resort.”
In the review of this case in the circuit court (5 C. C., page 627) the court, speaking of the closing of an eating house in which liquor is sold on the other days of the week, says—
“If the only sales of liquor at this establishment were made at the bar (and not in other parts of the room as was the case), and the bar was in a wholly different room from the main hall, but on Sunday it was in some manner securely closed from the other part of the room, this, we think, would be a substantial compliance with the statute, in so far as regular hotels and eating houses are concerned.”
This statement shows two conclusions of the court: first, that even in hotels and eating houses the place closed must be the entire place where the liquor is sold; and, secondly, that the closing of such places where liquor is sold would only be a compliance with the statute by regular hotels and eating houses.
The conclusion is inevitable that the statute means in reference to saloons, not only the actual room in which the liquor is sold, but all rooms actually used in connection with the traffic in intoxicants on the other days of the week.
The court must further hold that the evidence shows beyond a reasonable doubt that liquor was actually sold and paid for in the back room on other days of the week than Sunday.
The finding of the court will be that the defendant is guilty as charged in the information.